1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ANTOLIN ANDREWS,

11              Plaintiff,                No. CIV S-01-1621 GEB GGH P

12        vs.

13    TONI HAFEY, et al.,               ORDER &

14              Defendants.             FINDINGS AND RECOMMENDATIONS

15    _____/

16    Introduction/Background

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18    1983.  Pending before the court are: 1) plaintiff's December 6, 2005 motion for a temporary

19    restraining order (TRO) and for a permanent injunction; and 2) defendants' December 13, 2005

20    motion to dismiss, pursuant to Fed. R. Civ. 12(b)(6) and 8(a), to which plaintiff filed an

21    opposition.

22              This matter proceeds on an amended complaint, filed on October 30, 2001, the

23    action having been originally filed on August 21, 2001.  This case was stayed by Order, filed on

24    September 17, 2003, pending a ruling by the Ninth Circuit in Andrews v. King, CIV-S-01-2316

25    GEB GGH  P, to resolve the question of whether plaintiff was barred by 28 U.S.C. § 1915(g)

26    from proceeding in forma pauperis in this action.  The Ninth Circuit reversed the district court

1   decision and remanded CIV-S-01-2316 GEB GGH P; thereafter, by Order, filed on October 3,

2   2005, the stay in the instant action was lifted and defendants were ordered to file their response

3   to the amended complaint.  Defendants were subsequently granted two extensions of time to file

4   their response.  See Orders, filed on October 31, 2005, and on December 12, 2005.  Defendants

5   filed the pending motion to dismiss, as noted, on December 13, 2005, to which plaintiff filed his

6   timely opposition, on January 11, 2006.

7   Amended Complaint

8              In a wide-ranging and uneven amended complaint, consisting of approximately

9   120 pages, including 53 pages containing the body of the allegations and nearly 70 pages of

10  exhibits, plaintiff sets forth an often confusing mix of claims, difficult to untangle.  Plaintiff

11  names as defendants the following, whom plaintiff alleged to be in the positions set forth (at least

12  at the time of the filing of the amended complaint): Parole Officer Henry Lopez; Hearing Officer

13  M. Rodriguez; Deputy Director of Corrections and Planning and Programs Toni Hafey;

14  California Director of California Department of Corrections (CDC) Ed Alameida; Assistant

15  Director for Community Resources Sherrell Blakely; Assistant Director for Parole and

16  Community Service Regina Stephens; Chairman of the Board of Corrections Thomas E.

17  McConnell; Deputy Director of the Office of Administrative Law David B. Judson; Chief

18  Counsel of Administrative Law John D. Smith; Chairman of Board of Prison Terms Dave

19  Hepburn; Assistant Director for Parolee at Large Recovery Project D. E. Elmer.

20             The gravamen of this action appears to be that California's parole policy, wherein

21  parole is imposed after a prison term has been completed, including both time served and

22  application of earned time credits is unconstitutional.  Amended Complaint (AC), pp. 4-5.

23  Plaintiff begins his specific allegations as to defendant Lopez by describing his September 12,

24  1988 release from California Men's Colony where he had served the entire three years of a three-

25  year sentence.  AC, p. 6.  After complaining that the parole office to which he had been assigned

26  was too far away, he was transferred to another unit.  Id.  After completing his reentry into the

community by obtaining living quarters with a friend in a prestigious community and by securing a job, in December 1988, he was subjected to a surprise search of the home in which he was living, with five officers ransacking the house and another handcuffing him and keeping him under armed guard. Id., at 7-8. Plaintiff was told by an unidentified parole officer that a home visit had just been conducted, that the officer had a right to visit and search any place the plaintiff frequented, worked, or lived, and that plaintiff was to come in on Monday morning, even though plaintiff stated that he had to be at his job that day by 5:00 a.m. Id., at 8. Plaintiff thought all this unfair because he had served his entire prison term. Id. Plaintiff showed up at the parole office on Monday morning as told, but lost his job as a result of not showing up for work. Id., at 8-9.

The parole officer made it clear that he would visit any new place of employment that plaintiff might secure, so instead of looking for another job, plaintiff began typing a manuscript entitled "Iran Scam Tooo! [sic] Druglords of the Twenty-First Century." Id., at 9. Plaintiff read a manual which informed him that he was entitled to parole assistance in the form of job training and money to purchase work tools and for bus passes, etc., but was told by his parole officer that he would receive nothing and could complain about it from a jail cell. Id.

In 1990, plaintiff, still unable to obtain a job because he would be required to disclose his parole status, not by law but because of the threat by his parole officer that he would visit and possibly search any job site, became despondent and turned to drugs. Id., at 10. His weight in jail had "blossomed to 245 lbs.," so plaintiff began using crack cocaine. Id. "Exercise was out of the question since the plaintiff had been paralyzed from the waist down." Id. Plaintiff was arrested for cocaine possession and sentenced to two years' imprisonment, but was released after 14 months, having earned 10 months of credit. Id. Plaintiff was released on parole, despite having served, "according to the formula," his full sentence. Id.

An unidentified Los Angeles parole officer refused plaintiff the $200 to which each California parolee is entitled upon release because he had $28,000.00 in checks for plaintiff.

1  Id.  When plaintiff complained, he was handcuffed and threatened with a return to prison; the

2  parole officer's supervisor told plaintiff that he should take the $28,000.00 and go because the

3  parole officer could put him in jail for no reason or any reason. AC, p. 11.  Plaintiff called State

4  Senator David Roberti who had an aide take up the matter; plaintiff was told to return to the

5  parole office and received the $200.00.  Id., at 12.  Plaintiff walked into a check-cashing place

6  but was followed by the unnamed parole officer, after which he cashed the check and caught a

7  cab.  Id.  (The court observes that plaintiff offers no explanation for his ability to walk, thus

8  having apparently overcome his condition of paralysis from the waist down of which he earlier

9  complained).  Plaintiff was discharged "without warning" from parole two months later, after

10  having been told not to appear at the parole office even though parole conditions appeared to

11  require that he appear, which indicates a double standard.  Id., at 12-13.

12          In 1992, plaintiff was sentenced to 16 months, served the time and was released

13  (apparently prior to having served 16 months) having earned credits according to the formula.

14  Id., at 13.  Plaintiff left the country upon release and was not subject to parole.  Id.

15          In 1997, plaintiff served another 16-month prison term and was released to

16  defendant Parole Officer Henry Lopez.  Id.  Plaintiff had been imprisoned for personal cocaine

17  use; defendant Lopez told plaintiff that he expected him to test for cocaine.  Id.  Plaintiff

18  informed Lopez of his need for a catheter bag as a result of a gunshot wound, for which

19  defendant Lopez wanted to see something from the doctor.  Id.  Plaintiff referred him to his CDC

20  file.  Id.

21          Plaintiff secured an apartment three blocks from the parole office and entered into

22  three different businesses.  Id., at 14.  Defendant Lopez visited all of the business locations and

23  visited plaintiff's home at least three times; on one occasion, defendant Lopez saw a kitchen

24  knife in the living room and told plaintiff he could be sent back to jail for that.  Id.  Defendant

25  Lopez's demands for plaintiff to be at his office, when plaintiff had three businesses to run,

26  showed he was on a "power trip."  Id., at 15.

4

1        In October of 1996,[1] a University of Southern California security guard tried to

2   find out if plaintiff was on probation or parole as plaintiff walked home from one of his

3   businesses.  Id.  Plaintiff refused to answer the question; the guard called other USC guards.  Id.

4   It was 3:00 a.m. (for which plaintiff offers no explanation in his allegations as to why he would

5   be checking on his business at such an hour), and plaintiff declared loudly that he was an

6   American citizen[2] on his way home and did not have to answer questions about his parole or

7   probation status.  Id., at 16.  Three security guards tackled plaintiff and handcuffed him; plaintiff

8   complained of chest pains and was transported away by ambulance and was also booked for

9   interfering with a peace officer.  Id., at 17.  Defendant Lopez placed a parole hold on plaintiff.

10   Id.

11        In placing the parole hold, defendant Lopez followed the policy sanctioned by

12   defendants Thomas McConnell, Regina Stephens, Sharell or Sherrell Blakely, David B. Judson,

13   John Smith, Dave Hepburn and Toni Hafey, which policy denies plaintiff his due process rights.

14   Id.  Plaintiff states that his parole hold did not meet the criteria for a parole hold, where a parolee

15   may be detained if "[h]e is a danger to himself," or "to the person or property of another," or

16   "[h]e may abscond."   (Plaintiff cites Cal. Code Regs. tit. xv, § 3901.17.2; however, the criteria

17   are no longer set forth therein, but instead appear in § 2601).  Id.  The practice or policy is to

18   place a parole hold in every case, which denies the benefit of bail and precludes plaintiff from

19   contacting witnesses, etc.  Id.

20        Plaintiff goes on to set forth in some detail the various violations of his rights that

21   he contends occurred during the 1996 (or 1998?) parole hold, beginning with defendant Lopez's

22

---

23       [1] Plaintiff appears to be confused in his dates; plaintiff has earlier stated that he served a
24   16-month term in 1997 and then paroled with defendant Lopez as his parole officer.

25       [2] The court observes in passing that if his claim of American citizenship is accurate, it is
certainly curious that plaintiff has been in custody at the Northwest Detention Center for the
United States Bureau of Immigration and Customs Enforcement, apparently pending
26   deportation/removal from this country.

1   parole violation charges and the denial of his right to a lawyer or to reasonable assistance in

2   preparing for the hearing, the denial of his right to request a subpoena be issued, the right to the

3   testimony of witnesses, the right to advance notice of the time, date and place of the hearing, the

4   right to confront witnesses against him, the right to an interpreter for a foreign language speaking

5   witness. Id., at 18-25.[3]   Plaintiff alleges that defendant Lopez perjured himself at the hearing

6   and that defendant Rodriguez did not allow him proper notice of the hearing and that both

7   defendants placed into the record testimony from a witness made only to them, and not before

8   plaintiff. Id., at 24.

9        Later within the amended complaint, plaintiff complains about the parole hold

10  procedures he has apparently undergone six times in Los Angeles.  AC, pp. 32-33.  He alleges

11  that he has been placed on a parole hold for six separate parole violations, during which he has

12  never been provided notice of the time, date and place of the parole revocation hearing.  Id., at

13  33.  He alleges that defendants have engaged in a "wide-ranging conspiracy" to deny parolees

14  their rights so that parolees will be unable to present witnesses and documentary evidence at the

15  hearings so that prisons will remain full and defendants and "their underlings" will have job

16  security.  Id.

17       Plaintiff also alleges that an "ancillary effect" of this putative conspiracy is to

18  keep Democrats from voting, since the "poor and minorities...most times...vote a straight

19  Democratic ticket."  Id.   In addition to the ones set forth and repeated intermittently throughout

20  his amended complaint, plaintiff makes various other allegations concerning the deficiencies of

21  procedures followed by defendants in parole holds; for example, plaintiff claims that defendants

22  have a policy of not investigating the facts before placing a parole hold, that police "roam the

23

24       [3] The code sections plaintiff cites appear to be incorrect or out of date.  For example, at
    this time, Cal. Code Regs. tit. xv, § 2642 governs prehearing procedure regarding any necessary
25  witnesses.  Cal. Code Regs. tit. xv, § 2643 sets forth parolee rights; Cal. Code Regs. tit. xv, §
    2644 sets forth prerevocation hearing procedures.  Nevertheless, it is evident that plaintiff intends
26  to state that the defendants did not comply with the applicable regulations.

1   streets" looking for parolees to "fill their jails so they can have money from defendants." Id., at

2   36.   Plaintiff alleges that parole department hearing officers are not qualified to sit as judges and

3   that the "preponderance of the evidence" standard is insufficient to warrant placement of a

4   parolee back in prison. Id., at 39.   The parole board, under defendant Dave Hepburn, always

5   finds plaintiff guilty on charges of which he was acquitted by a jury and then sentences plaintiff

6   to a year. Id., at 40.   A six-month sentence for a misdemeanor is stretched to a year by parole

7   violations in which plaintiff is placed on a parole hold. Id.

8          Sporadically, throughout his amended complaint, plaintiff takes issue with the

9   practice or policy of defendants in the application of parole hold and parole revocation hearings

10  in not complying with the existing procedures, as well as apparently challenging the

11  constitutionality of the procedures themselves.   However, as noted, the gravamen of this

12  complaint appears to be that defendants Hafey, Terhune, Judson, Smith, Hepburn, Alameida,

13  Blakely, McConnell and Stephens create and promulgate an unconstitutional parole policy by

14  imposing parole conditions on plaintiff and others like him who have completed their prison

15  sentences.   Defendants are aware that under the determinate sentencing laws, plaintiff can be

16  sentenced only to a certain maximum time.   A scheme has been concocted whereby the CDC

17  keeps persons in prison beyond the time for which they had contracted to serve pursuant to plea

18  agreements.   Defendant Terhune[4] told plaintiff that he must work in order to gain credits toward

19  his release so that he might be released earlier than if he did not work.   Plaintiff cites Cal. Penal

20  \\\\\

21  \\\\\

22

---

23          [4] As defendants point out, the court did not order service upon defendant Terhune;
    however, plaintiff in his opposition makes clearer that he is suing the main body of defendants in
24  their official capacity for prospective relief only, including the CDC (or CDCR) Director;
    therefore, pursuant to Fed. R. Civ. P. 25(d), it is the current director who is substituted in for the
25  former CDC Director named in the amended complaint, Alameida.   Both Terhune and Woodford
    are former directors.   The current Acting Director is James E. Tilton, this individual should be
26  substituted in where plaintiff has named either Alameida or Terhune herein.

1   Code §§ 2931,[5] 2933.[6]  Plaintiff avers that defendant Terhune and his co-defendants have

2   instituted a policy whereby once a person leaves the custody of a prison facility, having served

3   his full sentence, he is kept in the custody of the CDC and denied the right to vote, to freedom of

4   movement, to pursue his happiness, to be free from unreasonable searches, etc., by requiring the

5   person to sign conditions of parole.  Defendant Elmer returns persons to custody after they have

6   served their entire terms, under the unconstitutional parole policy, and has returned plaintiff to

7   jail repeatedly.  Id., at 26-32, 48.

8          Plaintiff claims that such parole is unconstitutional because, pursuant to Cal.

9   Penal Code § 1170, while a criminal defendant must be advised that he or she shall serve a

10   period of parole and report to a parole office after the prison term, this is not the case if the

11   inmate has custody credits that equal both the time of confinement and the period of parole.  Id.,

12   at 31.  Plaintiff alleges that once he left the CDC he had served his entire sentence because his in-

13   custody credits added to his confinement time amounted to the entire sentence.  Id.  Plaintiff,

14   therefore, should never have been on parole and any return to prison should have required new

15   criminal charges.  Plaintiff has continually been subjected to prison and deprived of his civil

16   rights without criminal activity on his part due to the unconstitutional parole policy promulgated

17   by defendants.  Id., at 31-32.

18          Plaintiff seeks declaratory and injunctive relief and money damages.  By his

19   opposition, he seeks to clarify that he " first seeks an injunction against enforcement of all the

20   statutes of parole as it impacts the determinately sentenced criminal."  Opp., p. 38.  He also seeks

21   money damages from defendants Lopez and Rodriguez.  Id.  Elsewhere in his opposition, he

22   appears to be seeking money damages from defendant Hepburn as well.  Id., at p. 52.   He

23   voluntarily dismisses defendant McConnell from this action.  Id., at 47.

24   _____

25          [5] Cal. Penal Code § 2931, inter alia, grants the CDC authority to reduce a prison term by
     one-third for good behavior and work participation.

26          [6] Cal. Penal Code § 2933 speaks to the issue of worktime credits on sentences.

1 | Motion for TRO and for Permanent Injunction

2         The court construes plaintiff's request for an order that non-parties be directed to

3 provide him postage and copies for all legal documents and be ordered not to scan legal

4 documents, as a motion for a protective order.  Matters that go to requests for procedures to be

5 utilized within a litigation (if the requests are directed to a party) are not injunctive relief

6 requests.  Matters appropriate for injunctive relief go to the *merits* of an action.  State of New

7 York v. United States Metals Refining Co., 771 F.2d 796, 801 (3rd Cir. 1985).  Plaintiff's request

8 to correspond with other inmates does not go to the merits of his complaint.

9         Local Rule 72-302 of the Eastern District of California permits magistrate judges

10 to handle all aspects of a prisoner's case short of jury trial.  It has also been interpreted as

11 authorizing magistrate judges to issue orders under § 636(b)(1)(A) for non-dispositive motions or

12 motions not involving injunctive relief.  See also United States v. Raddatz, 447 U.S. 667, 673,

13 100 S. Ct. 2406, 2411 (1980) (magistrate judge may determine any pretrial matter except

14 "dispositive" motions).  Therefore, the fact that parties are directed in their activities by a

15 magistrate judge cannot, without more, transform the matter at hand into an "injunctive" relief

16 matter governed by § 636(b)(1)(B).  See, e.g., Grimes v. City and County of San Francisco, 951

17 F.2d 236 (9th Cir. 1991) (magistrate judge may compel a party to pay prospective sanctions of

18 $500.00 per day during period of non-compliance with discovery orders to ensure compliance).

19 It is only when the "injunctive" relief sought goes to the merits of plaintiff's actions or to

20 complete stays of an action that orders under § 636(b)(1)(A) are precluded.  See, e.g., Reynaga v.

21 Cammisa, 971 F.2d 414 (9th Cir. 1992).

22         In the instant case, plaintiff's request does not go to the merits of plaintiff's

23 action.  Accordingly, this matter may be handled by court order.

24         Plaintiff asks this court for an order directing non-parties, whom he improperly

25 designates as "defendants," to provide him postage for all legal documents, enjoining these non-

26 parties from enforcing a memorandum/order which directs that copies of legal documents not be

provided and that non-parties be directed not to "engage in 'scanning' of the legal documents of

the detainees at Northwest Detention Center."   TRO motion, pp. 1-2.  Every individual plaintiff

names in his motion is a non-party to this action, i.e., they are employed at the Northwest

Detention Center for the United States Bureau of Immigration and Customs Enforcement

(BICE), including library attendants Jeff Myers and Montevise; Warden G. Wigen; Assoc.

Warden Cheek; Compliance Officer McHatton and Officer in Charge Michael Melendez.

Plaintiff who gives his name in the motion as Vincent Daniel Hopper, but who is

proceeding in this action under the name of Antolin Andrews, is at present a detainee at the BICE

Northwest Detention Center (NWDC); he alleges that he is a citizen of the United States who is

being held "due to his prior use of an alien identity."  TRO Motion, p. 4.  Plaintiff claims that

upon his arrival at the detention center, he told staff that he had pending civil litigation and

would need his property from California.  Id., at p. 5.  The Immigration Bureau (or BICE) has a

policy of not taking a detainee's property at the time the detainee is transported; the property was

shipped on November 14, 2005.  Id., at pp. 5-6.  Plaintiff claims that staff was "aghast" upon

seeing the vast amount of documents plaintiff had for his pending cases.  Plaintiff claims that the

individuals he has named in his motion, whom he continues to mis-characterize as "defendants,"

noted at least twelve cases when plaintiff mailed notices of a change of address to the courts.  Id.,

at p. 6.  He seeks this order to proceed in a number of his on-going cases.  Shortly thereafter, a

memorandum, dated Nov. 21, 2005, from Assoc. Warden Cheek issued to all staff and detainees

stating, inter alia, that the law libraries resources were for NWDC detainees:

> solely for the purpose of assisting detainees to prepare for any
> aspect of their Immigration and Customs Enforcement (ICE) case.
> This may include any and all civil litigation surrounding the fact
> that they are detained, the reason(s) for their being detained, the
> condition of their confinement, etc.  Civil or criminal matters that
> do not pertain to an ICE action are not to be supported by NWDC
> staff.  Exceptions to this policy must be submitted to the ICE
> Assistant Field Office Director (AFDC) via a "Detainee Request
> Form" (Kite).

1
2
3
4

> Detainee requests for copying "Special Documents" / (Legal
> Correspondence) must be submitted to the Law Library
> Coordinator on a "Detainee Request Form" (Kite) together with the
> document(s) to be photocopied.  Only those documents specific to
> an ICE case or legal matter (as noted above) will be copied.  Other
> forms or documents will be returned with the notation, "No Action
> Required."

5   Id., at p. 20.   Plaintiff asserts that he is the only detainee with any litigation "outside of the

6   immigration sphere," and that the policy was newly crafted in particular only to have a

7   deleterious impact upon him and to interfere with his ability to litigate some 12 cases that he sets

8   forth, among which is the instant case.  Id., pp. 7-8, 10.

9          As noted, none of the defendants in this action are located at NWDC.  Usually

10  persons or entities not parties to an action are not subject to orders for injunctive relief.  Zenith

11  Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).  However, the fact one is not a

12  party does not automatically preclude the court from acting.  The All Writs Act, 28 U.S.C. §

13  1651(a) permits the court to issue writs "necessary or appropriate in aid of their jurisdictions and

14  agreeable to the usages and principles of law."  See generally S.E.C. v. G.C. George Securities,

15  Inc., 637 F.2d 685 (9th Cir. 1981); United States v. New York Telephone Co., 434 U.S. 159

16  (1977).  This section does not grant the court plenary power to act in any way it wishes; rather,

17  the All Writs Act is meant to aid the court in the exercise and preservation of its jurisdiction.

18  Plum Creek Lumber Company v. Hutton, 608 F.2d 1283, 1289 (9th Cir. 1979).

19          Nevertheless, the court is unwilling to invoke the jurisdiction of the All Writs Act

20  for the following reasons.  First, plaintiff's constitutional right of access to the court requires the

21  state to provide law library or legal assistance only through the pleading stage of a civil rights

22  action.  Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995).  This action is beyond the pleading

23  stage.  Moreover, plaintiff does not allege that he has suffered any actual injury as a result of the

24  copying policy set forth.  Plaintiff has certainly been able to file and serve the instant motion and

25  has filed and served a lengthy opposition timely to the pending motion to dismiss.  Nor does

26  plaintiff show that he has sought to invoke the procedure set forth in the policy for "exceptions"

1   to the copy policy restricting the type of litigation for which copies will be provided to determine

2   whether or not he may receive the copies he needs to proceed in this case.  This court is only

3   concerned with losing jurisdiction over this matter and not with the 11 other unrelated cases

4   plaintiff sets forth, to the extent that plaintiff alleges that he has been hampered in

5   communicating with any court on pending matters, claiming hindrances unrelated to this case.

6   There is no evidence that plaintiff has had any obstruction or hindrance actually implemented by

7   NWDC staff in litigating this matter.  Plaintiff does not state that he has been unable to obtain

8   copies or to file and serve any pleading or motion in this case.  Any reference to this matter

9   speaks only of potential, that is, unrealized, or purely speculative injury;[7] such injury does not

10  constitute irreparable harm.  See Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674

11  (9th Cir. 1988); Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984).  A

12  presently existing actual threat must be shown, although the injury need not be certain to occur.

13  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31 (1969); FDIC v.

14  Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997), cert. denied, 523 U.S. 1020 (1998); Caribbean

15  Marine Servs. Co., 844 F.2d at 674.  Plaintiff does not establish the necessity for a protective

16  order by his insufficiently supported motion and, therefore, the request for such an order must be

17  denied.

18  Motion to Dismiss

19          Defendants bring their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and

20  Fed. R. Civ. P. 8(a).  Defendants move to dismiss plaintiff's claims that the state's parole

21  statutes, Cal. Penal Code §§ 3000-3004, are unconstitutional as applied to inmates who have

22  ────────────────────

23          [7] In addition to failing to demonstrate any hindrance he has actually encountered in
    proceeding in this matter, plaintiff has the somewhat grandiose and wholly mistaken notion that

24  his is the "only matter" challenging the constitutionality of California's parole system on the ill-
    founded basis that inmates who have served their prison sentences cannot constitutionally be

25  placed on parole or subjected to parole conditions, inter alia, impacting and limiting various
    individual rights, such as the right to vote, etc.  TRO motion, p. 14.  The undersigned alone has

26  very recently adjudicated two such wrongly premised cases:  Crosby v. Woodford, CIV S- 03-
    2634 LKK GGH P and Britton v. Woodford, CIV S-04-0472 LKK GGH P.

served a determinate sentence, in essence, for failure to state a claim.  Motion to Dismiss (MTD), pp. 9-12.  Defendants contend that claims for damages arising from incidents which occurred in 1988, 1990 and 1992 are time-barred because they all accrued before August 21, 1998.  MTD, pp. 13-14.  Defendants also would include the hearing plaintiff avers occurred in 1996, but defendants concede that plaintiff may be intending to challenge a September 1998 parole hold and the attendant October and November, 1998 parole revocation hearings, for which claims defendants seek dismissal with leave to amend .[8]  Id., p. 13, n. 4.  Defendants argue that any claim for declaratory or injunctive relief is time-barred because any such claim accrued before August 21, 2000.  Id., at 14.  Defendants also contend that claims arising from parole revocation hearings against defendants Rodriguez and Hepburn are barred because these defendants are protected by absolute quasi-judicial immunity.  Id., at 15.  As plaintiff has dismissed the claims against defendant McConnell, defendants argument for dismissal of the claims against this defendant have been rendered moot.  Defendants contend that claims against defendants Judson and Smith should be dismissed.  Id., at 17-18.  Defendants state that claims against defendant Hepburn arising from the parole appeal process should be dismissed without leave to amend as should claims against defendant Elmer who is alleged only to have returned persons to custody pursuant to the parole statutes, which, as defendants aver, are not unconstitutional.  Id., at 18.  Further, defendants contend that defendants Hafey, Alameida, Judson, Smith, Hepburn, Stephens and Elmer are entitled to qualified immunity.  Id., at 19-20.  Finally, defendants assert that, should any portion of the amended complaint survive their dismissal motion, any such portion should be dismissed, pursuant to Rule 8(a).  MTD, at p. 21.

Legal Standard for Motion to Dismiss Under Fed. R. Civ. 12(b)(6)

A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that plaintiff cannot prove any set of facts consistent with his allegations which

---

[8]  See Footnote 11.

1   would entitle him to relief.  NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803

2   (1994); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley

3   v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), Cervantes v. City of San Diego, 5 F.3d

4   1273, 1274-75 (9th Cir. 1993).  Dismissal of the complaint, or any claim within it, "can be based

5   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

6   cognizable legal theory."  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990);

7   see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

8           In considering a motion to dismiss, the court must accept as true the allegations of

9   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

10  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

11  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

12  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869 (1969).  The court will "'presume that general

13  allegations embrace those specific facts that are necessary to support the claim.'"  NOW, 510

14  U.S. at 256; 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S.555, 561, 112 S.

15  Ct. 2130, 2137 (1992).  Moreover, pro se pleadings are held to a less stringent standard than

16  those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).  A

17  motion to dismiss for failure to state a claim should not be granted unless it appears beyond

18  doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to

19  relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing

20  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Palmer v. Roosevelt

21  Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

22          The court may consider facts established by exhibits attached to the complaint.

23  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may disregard

24  allegations in the complaint if they are contradicted by facts established by exhibits attached to

25  the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

26  Furthermore, the court is not required to accept as true allegations that contradict facts which

14

1    may be judicially noticed.  <u>Mullis v. United States Bankruptcy Ct.</u>, 828 F.2d 1385, 1388 (9th Cir.

2    1987), <u>cert.</u> <u>denied</u>, 486 U.S. 1040 (1988).  The court need not accept as true conclusory

3    allegations, unreasonable inferences, or unwarranted deductions of fact.  <u>Western Mining</u>

4    <u>Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir.), <u>cert.</u> <u>denied</u>, 454 U.S. 1031 (1981).  The court

5    need not accept legal conclusions "cast in the form of factual allegations."  <u>Western Mining</u>

6    <u>Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir.), <u>cert.</u> <u>denied</u>, 454 U.S. 1031 (1981).

7         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

8    opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  <u>See</u>

9    <u>Noll v. Carlson</u>, 809 F. 2d 1446, 1448 (9th Cir. 1987).

10                 <u>Fed. R. Civ. P. 8</u>

11        Fed. R. Civ. P 8 sets forth general rules of pleading in the federal courts.

12    Complaints are required to set a forth (1) the grounds upon which the court's jurisdiction rests,

13    (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for

14    the relief plaintiff seeks.  Rule 8 requires "sufficient allegations to put defendants fairly on notice

15    of the claims against them."  <u>McKeever v. Block</u>, 932 F.2d 795, 798 (9th Cir. 1991)).  <u>Accord</u>

16    <u>Richmond v. Nationwide Cassel L.P.</u>, 52 F.3d 640, 645 (7th Cir. 1995) (amended complaint with

17    vague and scanty allegations fails to satisfy the notice requirement of  Rule 8.)

18        Even if the factual elements of the cause of action are present, but are scattered

19    throughout the complaint and are not organized into a "short and plain statement of the claim,"

20    dismissal for failure to satisfy Rule 8(a)(2) is proper.  <u>McHenry v. Renne</u>, 84 F.3d 1172, 1178

21    (9th Cir. 1996) (stating that a complaint should set forth "who is being sued, for what relief, and

22    <i>on what theory</i>, with enough detail to guide discovery" (emphasis added)).  A complaint that fails

23    to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to Fed. R. Civ. P.

24    41(b).  Rule 8; <u>Nevijel v. North Coast Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981)).  Further,

25    "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the

26    complaint is wholly without merit," <u>McHenry</u> 84 F.3d at 1179.

1    This amended complaint illustrates the "unfair burdens" imposed by complaints,

2  "prolix in evidentiary detail, yet without simplicity, conciseness and clarity" which "fail to

3  perform the essential functions of a complaint." McHenry, 84 F.3d at 1179-80.

4  Discussion

5    Failure to State a Claim re: Constitutionality of CA Parole Statutes/Policy

6    Plaintiff alleges that he was sentenced to a definite term of imprisonment,

7  pursuant to the DSL, as codified in Cal. Penal Code § 1170.  Although plaintiff fails to cite the

8  applicable statutes in the amended complaint, he does not dispute defendants' contention that

9  plaintiff asks that the court find, inter alia, the parole statutes, Cal. Penal Code §§ 3000 through

10  3004, unconstitutional.  Without citing the appropriate statutes, he also contends that the parole

11  statutes, as well as parole conditions and policy, as applied to him (and other inmates who

12  become parolees) subject him, inter alia, to unreasonable searches and seizures,[9] limit his right to

13  travel[10] and to vote,[11] etc., in violation of his federal constitutional rights.  In his opposition, he

14  specifically mentions Cal. Penal Code §§ 3000, 3056, 3002, 3003, 3005, and argues that these

15  statutes are unconstitutional as applied to persons who have served "the maximum sentence the

16  court can order."  Opp., pp. 3-23 (quoted from page 9).

17    Plaintiff's conceptual miscue here is that he does not view parole as part of his

18  criminal sentence.  It certainly is.  As defendants observe, plaintiff fails to point out any

19  constitutional provisions implicating the constitutionality of California's parole scheme, wherein

20  an individual is convicted of a crime, serves a determinate sentence of confinement that is

21  reduced by credits earned, and is then released on parole.  MTD, p. 10.  They are equally correct

22

23    [9] Cal. Penal Code § 3067.

24    [10] Cal. Penal Code § 3059.

25    [11] Cal. Const., art. II, § 4; see also, Cal. Elec. Code § 2150(a)(9), in registering to vote, an
26  applicant must show by affidavit that he or she "is currently not imprisoned or on parole for the
conviction of a felony."

1    that plaintiff does not do so because there are no such constitutional provisions.  Id.  Nothing in

2    the federal constitution precludes a state from mandating parole after service of a statutory

3    maximum term.  Indeed, that is how the federal sentencing laws are presently set up.  One serves

4    a prison term (including a prison term that is a statutory maximum), *and* one is also sentenced to

5    supervised release with conditions (i.e., just like a parole term).

6          The Supreme Court has made clear that "given a valid conviction, the criminal

7    defendant has been constitutionally deprived of his liberty to the extent that the State may

8    confine him and subject him to the rules of its prison system ...." insofar as those conditions are

9    not otherwise violative of the Constitution.  Meachum v. Fano, 427 U.S, 215, 224, 96 S. Ct. 2532

10    (1976).  In California, a parole period is part of a criminal sentence and a parolee is within the

11    custody of the California Department of Corrections.  Armstrong v. Davis, 275 F.3d 849, 856

12    (n.3) ("parolee 'under the legal custody of the [California] Department  [of Corrections]'") (9th

13    Cir. 2001) [internal citations omitted]; U. S. v. Crawford, 323 F.3d 700, (9th cir. 2003),

14    dissenting opinion, citing Latta v. Fitzharris, et al., 521 F.2d 246, 249 (9th Cir. 1975) (en banc)

15    ("'A California parolee is' ....still serving his sentence....[and] remains under the ultimate control

16    of the Adult Authority and the immediate control of his parole officer.")

17          In finding that defendants' motion should be granted on the ground that plaintiff

18    has failed to state a claim when he seeks to challenge the constitutionality of California's parole

19    statutes and policies, the court must recommend dismissal of any such claim without granting

20    leave to amend because it is evident that the defects of this claim cannot be cured.

21                  Statute of Limitations

22          As defendants note, 42 U.S.C. § 1983 does not contain its own statute of

23    limitations.  MTD, p. 12, citing TwoRivers v. Lewis,174 F.3d 987, 991 (9th Cir. 1999).  Federal

24    courts apply the personal injury statute of limitations of the forum state to section 1983 claims,

25    and in California, at the time of plaintiff's filing, the applicable statute of limitations was one

26    year, as codified in Cal. Code  Civ. Proc. § 340(3).  Fink v. Shedler, 192 F.3d 911, 914 (9th Cir.

1   1999), citing <u>Wilson v. Garcia</u>, 471 U.S. 261, 276, 105 S.Ct. 1938 (1985); <u>Elliott v. City of</u>

2   <u>Union City</u>, 25 F.3d 800, 802 (9th Cir. 1994).

3            Although as of January 2003, California amended the statute of limitations for a

4   personal injury action setting forth that a personal injury action must be filed within two years,

5   not one, of the accrual of the cause of action (Cal.Code Civ. Proc. § 335.1), it is not retroactive,

6   except for victims of the September 11, 2001 terrorist actions.  <u>Rodriguez v. Superior Court</u>, 108

7   Cal. App. 4th 301, 303, 133 Cal. Rptr. 2d 294, 296, n. 2 (2003) (citing Stats. 2002, ch. 448, § 1.);

8   <u>Krusesky v. Baugh</u>, 138 Cal. App. 3d 562, 566, 188 Cal. Rptr. 57 (1982).

9            Pursuant to Cal. Code Civ. P. § 352.1(a), a prisoner serving a term of less than life

10  is entitled to the two-year tolling provisions before the commencement of the statute of

11  limitations for bringing a civil rights action.  <u>Fink v. Shedler</u>, 192 F.3d 911 at 914.  It is evident

12  that plaintiff is not a life prisoner; currently, he has paroled from state prison in California and is

13  located in an federal immigration detention center.

14           Plaintiff had three years from the accrual of any cause of action under 42 U.S.C. §

15  1983 to bring his money damages claims.  The original complaint in this action was filed on

16  August 21, 2001.  Therefore, any cause of action that accrued prior to August 21, 1998 is barred

17  by the statute of limitations; this would include the incidents recounted in the amended complaint

18  preceding that date, including any parole holds or parole occurring in 1988, 1990, 1992, 1996, or

19  any other date before August 21, 1998.  Plaintiff argues against the application of a statute of

20  limitations bar, contending that somehow he has been subjected to a "continual violation,"

21  equitably tolling the statute of limitations, an argument that does not have merit.  Opp., pp. 27-

22  35.  He contends that defendants' record submitted, inter alia, for the court's judicial notice, from

23  his state prison file confirms that since his 1989 release, he has continually suffered from the

24  unconstitutional conditions of parole imposed on him.[12]  Opp., p. 28.  Plaintiff's interpretation of

25  _____

26       [12] Defendants have sought judicial notice of certain of plaintiff's prison records in this
     Rule 12(b)(6) motion, arguing that such notice may be granted without converting their motion

1    this doctrine would render the statute of limitations virtually meaningless by allowing the

2    exception to swallow the rule.  The question is not whether or not there were ramifications from

3    the incidents giving rise to a cause of action, which is very often the case in civil rights actions,

4    but whether or not the time-barred act can be linked with an act within the limitations period,

5    such that the court may deem the combination a single continuous act within the limitations

6    period.  Selan v. Kiley, 969 F.2d 560, 564 (7th Cir.1992) (finding no continuing violation).  As

7    the Supreme Court has made clear, with respect to the continuing violation doctrine: "the proper

8    focus is on the time of *discriminatory act*, not the point at which the *consequences* of the act

9    become painful."  Chardon v. Fernandez, 454 U.S. 6, 8, 102 S. Ct. 28, 29 (1981) per curiam

10   [emphasis in original].

11            With respect to Title VII and § 1983 claims, the Ninth Circuit appears to

12   recognize two categories of continuing violations: (1) a "systematic policy" of discrimination,

13   also referred to as "an employer wide policy or practice"; and (2) a "series of related acts against

14   a single individual."  See Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th Cir.1990); Green v. Los

15   Angeles Cty. Superintendent of Sch., 883 F.2d 1472, 1480 (9th Cir.1989).  In any event, it is a

16   threshold requirement that some violation have occurred within the limitations period.  In order

17   to identify a continuing violation, he must identify at least one such action.  And plaintiff has not

18

19   into one for summary judgment. MTD, pp. 7-8, citing MGIC Indem. Corp. v. Weisman, 803
20   F.2d 500, 504 (9th Cir. 1986) (permitting judicial notice on a motion to dismiss of "matters of
     public record outside the pleadings"); McRae v. Hogan, 576 F.2d 615, 616 n. 2 (5th Cir. 1976)
21   (permitting judicial notice of a warden's order, a portion of a prison record, on appeal under Fed.
     R. of Evid. 201).  Defendants argue as well that documents submitted by the party moving for
22   dismissal may be considered by the court if produced by moving party, if such documents are
     referred to in a complaint, central to a claim and of unquestioned authenticity.  MTD, p. 8, citing
23   Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on another ground by Galbraith v.
     County of Santa Clara, 307 F.3d 1119 (th Cir. 2002).  The court takes judicial notice of a specific
24   document, among those submitted by defendants, plaintiff's CDC chronological history, a
     request with which plaintiff does not take issue, and only for a limited purpose, in part because
25   plaintiff himself does not question the accuracy of the record.  The court specifically takes note
     of the entries in plaintiff's chronological history that set forth that a parole hold was placed on
26   plaintiff on September 17, 1998, and that a parole revocation hearing was held on October 26,
     1998, as well as on November 20, 1998.

1   made that plain within his amended complaint.  Although it is likely that plaintiff intended to put

2   at issue events, inter alia, resulting in a 1998 parole hold and revocation hearing, he does not so

3   state within the amended complaint, wherein he refers to the incidents as having occurred in

4   1996.  An absolute prerequisite for finding a continuing violation is that there must be some

5   violation within the limitations period.  In identifying a continuing violation, "[t]he critical

6   question is whether any present *violation* exists."  <u>United Air Lines, Inc. v. Evans</u>, 431 U.S. 553,

7   558 (1977) (emphasis in original) (no continuing violations found where a stewardess suffered a

8   present disadvantage in seniority based on a past discriminatory act outside the limitations

9   period.); <u>Mack v. Great Atlantic and Pacific Tea Co., Inc</u>., 871 F.2d 179, 183 (1st Cir.1989) ("In

10   short, serial violations or no, plaintiff retained the burden of demonstrating that *some*

11   discriminatory act  transpired within the appropriate time frame." [Emphasis in original]); <u>Green</u>

12   <u>v. Los Angeles</u>, 883 F.2d 1472, 1480 (9th Cir. 1989) (requiring, in order to show a continuing

13   violation, "'a series of related acts, one or more of which falls within the limitations period, or

14   the maintenance of a discriminatory system both before and during the (limitations) period.'")

15   [Internal citation omitted.]

16          As noted, the "continuing violation" theory is an exception to the statute of

17   limitations.  The burden of proof is therefore on the plaintiff to show that the exception applies,

18   by showing an event that occurred within the limitations period.  <u>See</u> <u>Mirza v. Department of</u>

19   <u>Treasury</u>, 875 F. Supp. 513, 518 (N.D.Ill.1995); cf. <u>Callan v. Pepsi-Cola Bottling Co. of Topeka,</u>

20   <u>Inc</u>., 823 F. Supp. 879, 883 (D.Kan.1992) (citing cases); <u>California Sansome Co. v. U.S.</u>

21   <u>Gypsum</u>, 55 F.3d 1402, 1406-07 (9th Cir.1995) (burden on plaintiff to "prove the facts necessary

22   to toll the limitations period once it is established" that the statute would have otherwise run).  In

23   light of defendants' evidence that the majority of plaintiff's claims are time-barred, plaintiff must

24   identify a specific date indicating that any alleged due process violations occurred within the

25   limitations period.  Plaintiff may not assert as the "continuing violation" the ongoing application

26   of parole procedures and policies arising from the parole statutes codified in the California Penal

1  Code.  Plaintiff's claims will be dismissed with leave to amend; however, plaintiff's claims that

2  falling outside the statute of limitations, including any claims during 1988, 1990, 1992 and 1996,

3  the court will recommend that any claim for money damages arising from allegations related to

4  such events be dismissed without leave to amend.

5          Defendants are also correct that where plaintiff seeks declaratory or injunctive

6  relief, he is not entitled to tolling because Cal.Code Civ.Proc. § 352.1(c) specifically excludes

7  tolling for § 1983 actions relating to conditions of confinement, other than those actions for

8  damages.  MTD, p. 14.  Thus, any claims for declaratory or injunctive relief for any cause of

9  action arising before August 21, 2000 are time-barred.  This renders barred by the statute of

10  limitations any of the parole holds or parole revocation hearings from 1988, 1990, 1992, 1996

11  and even the parole hold and hearing, the procedures of which he challenges, if he intended to

12  date that as a 1998 hearing.  So that while plaintiff will be granted leave to amend to set forth

13  claims for money damages from a 1998 parole hold and revocation hearing (which he apparently

14  mis-dated in his amended complaint as having occurred in 1996), the court will recommend

15  dismissal with prejudice as time-barred any claims for declaratory or injunctive relief related to

16  the 1998 parole hold and revocation hearing, as well as, of course, any earlier holds or hearings.

17  Moreover, as it is evident that plaintiff is no longer incarcerated in CA, and that plaintiff himself

18  indicates that he paroled in California in 2005 (opp., p. 28), it is self-evident that any injunctive

19  relief claims related to that parole hold and parole revocation hearing have been rendered moot.

20  See Sample v. Borg, 870 F.2d 563 (9th Cir. 1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th

21  Cir. 1986).  See also Reimers v. Oregon, 863 F.2d 630, 632 (9th Cir. 1988).  Moreover, plaintiff

22  has presented no evidence whatever of any reasonable possibility that he will be incarcerated

23  within any state institution at any predictable time in the future.

24          Because the court has found that the entire amended complaint must be dismissed

25  on the grounds that plaintiff has not stated a cause of action with respect to his allegation of that

26  California's parole statutes are unconstitutional and on the ground that the claims of due process

1   violations at his 1988, 1990, 1992, 1996 and 1998 are barred with respect to claims for injunctive

2   and declaratory relief, and, only to the extent that plaintiff intends to make a claim for money

3   damages with respect to actions arising a 1998 parole hold and revocation hearing, may any such

4   claim be found timely, the amended complaint will be dismissed.  Plaintiff is granted leave to

5   amend only to the extent that he may seek to set forth claims for money damages as to a hearing,

6   etc., that occurred in 1998, to which he ascribes a date in his amended complaint of 1996.

7              The court will not reach any further ground for dismissal, as the amended

8   complaint is being dismissed in its entirety based on the grounds addressed.  Because plaintiff is

9   wont to meander far afield, managing to be both disjointed and repetitive in his allegations,

10  plaintiff will be required to confine himself to a second amended complaint, should he choose to

11  amend, of no more that 15 pages.  Any exhibits he includes, not to exceed an additional 15 pages,

12  should go only to support the specific colorable claims in any second amended complaint.

13             Accordingly, IT IS ORDERED that:

14             1.  Plaintiff's December 6, 2005 motion for a temporary restraining order (TRO)

15  and for a permanent injunction, construed as a motion for a protective order, is denied as

16  unnecessary;

17             2.  Defendants' December 13, 2005 motion to dismiss is granted as to plaintiff's

18  claims for money damages against defendants Lopez and Rodriguez, to the extent that he

19  intended such claims to challenge the parole hold and parole revocation hearings in 1998, and

20  these claims are dismissed with leave to amend within 30 days, as to all other claims not

21  addressed in this Order, the court recommends dismissal without leave to amend (see Findings

22  and Recommendations below); should plaintiff file a second amended complaint, it must be no

23  longer than 15 pages, with a maximum of 15 additional pages in the form of exhibits;

24  failure to file a second amended complaint timely will result in a recommendation of dismissal of

25  this action.

26  \\\\\

1          3.  Plaintiff's request to voluntarily dismiss defendant McConnell is granted and

2    this defendant is dismissed.

3          IT IS HEREBY RECOMMENDED that defendants' December 13, 2005 motion

4    to dismiss be granted and that:

5          1.  Plaintiff's claims against defendants Lopez, Rodriguez, Hafey, Alameida

6    (Terhune or Tilton), Blakely, Stephens, Judson, Smith, Hepburn, Elmer, arising from plaintiff's

7    challenge to the constitutionality of the parole statutes or policy arising therefrom be dismissed

8    without leave to amend;

9          2.  Plaintiff's money damages claims and claims for injunctive or declaratory

10   relief arising from any conditions of parole and any parole hold or parole revocation hearing in

11   1988, 1990, 1992, and 1996 be dismissed without leave to amend as barred by the statute of

12   limitations;

13         3.  Plaintiff's declaratory relief and injunctive relief claims against defendants

14   Lopez and Rodriguez arising from parole conditions placed on plaintiff as well as any parole

15   hold and parole revocation hearings that arose in 1998 be dismissed as time-barred, and his

16   injunctive relief claims arising from a cause of action that accrued in 1998 also be dismissed as

17   moot.

18         These findings and recommendations are submitted to the United States District

19   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

20   days after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23   shall be served and filed within ten days after service of the objections.  The parties are advised

24   \\\\\

25   \\\\\

26   \\\\\

1    that failure to file objections within the specified time may waive the right to appeal the District

2    Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: 6/12/06

4                                                                    /s/ Gregory G. Hollows

5                                                          _____
                                                           GREGORY G. HOLLOWS
     GGH:009                                               UNITED STATES MAGISTRATE JUDGE
6    andr1621.mtd+

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26